UNION PAC. R. CO. v. UNITED STATES
No. 46989.

United States Court of Claims.
Jan. 3, 1950.

Lawrence Cake, Washington, D. C., for the plaintiff. Elmer B. Collins, Omaha, Neb., was on the brief.

Louis R. Mehlinger, Washington, D. C., with whom was Assistant Attorney General H. G. Morison, for the defendant.

Before JONES, Chief Judge and LITTLETON, HOWELL, MADDEN, and WHITAKER, Judges.

LITTLETON, Judge.

Plaintiff sues to recover higher freight rates than were paid by defendant, on the basis of land-grant deductions made by the Government, for the transportation over its lines of certain Government property between Ogden, Utah (or points east of Ogden), and Portland, Oregon (or points west of Portland), during the period August 3, 1940, to August 28, 1942. Plaintiff is not a land-grant railroad but on November 17, 1939, it and the defendant entered into a Freight Land-Grant Equalization Agreement by which the plaintiff and other carriers agreed "to accept for the transportation of property shipped for account of the Government of the United States and for which the Government of the United States is lawfully entitled to reduced rates over land-grant roads, the lowest net rate lawfully available, as derived through deductions account of land-grant distance from lawful rates filed with the Interstate Commerce Commission or the various State commissions applying from points of origin to destination at time of movement."

The facts are not in dispute. The only question presented is whether the method used by plaintiff in constructing the lowest net land-grant rates lawfully available to the Government, or the method used by defendant in constructing such rates, is correct under the Equalization Agreement.

For the transportation services involved herein plaintiff computes the amount alleged to be due it on the basis of net land-grant rates constructed by making land-grant deductions from the applicable tariff rates via the Southern Pacific Company from Ogden, Utah, through Fernley and Wadsworth, Nevada, Alturas, California, and Klamath Falls, Springfield, and Eugene, Oregon. In constructing these land-grant rates for the various shipments via the Alturas route, plaintiff made deductions for land-grant from the Southern Pacific Company's proportion of the through tariff rate on the basis of the actual land-grant mileage (126.14 miles between Eugene and Portland, Ore.) physically incorporated in the line of the Southern Pacific through Fernley, Wadsworth, and Alturas. The land-grant deduction based on the percentage of land-grant mileage in this route was 5.715%.

With respect to all shipments now in issue the net rates used by defendant in making payment on plaintiff's bills were constructed by using the lawfully published gross tariff rate which applied over the lines of the Southern Pacific Company from Ogden, Utah, through Fernley and Wadsworth, Nevada, Alturas, California, and Klamath Falls, Springfield, and Eugene, Oregon, to Portland, with land-grant deductions based upon the percentage (24.807%) of land-grant mileage (663.16 miles) between Ogden, Utah, and Portland, Oregon, via the route of the Southern Pacific Company through Fernley, Nevada, Roseville, California, and Eugene, Oregon.

The gross rates used by defendant were lawfully available under the published tariffs between points in Utah and points in Oregon and Washington via Fernley and Wadsworth, Nev., Alturas, Calif., and Klamath Falls and Springfield, Oregon.

The position taken by plaintiff is that if the Government uses *the rates applicable via one route and restricted to that route,* the percentage of land-grant deductions to be made from such gross tariff

rates must be determined on the basis of the land-grant mileage *in that same route*. It contends that if the Government uses the rates restricted to the Fernley-Alturas route, it must also use the percentage of land-grant mileage in that same route in determining the land-grant deductions to be made in establishing the net rates, and, on the other hand, if the Government uses the higher percentage of land-grant mileage in the Fernley-Roseville route for the purpose of determining the land-grant deductions, it must also use the combinations of local and other rates applicable via the Roseville route.[1]

The land-grant and non-land-grant lines of the Southern Pacific Company here in question are shown on maps printed in Southern Pacific Co. v. United States, 307 U.S. 393, at pages 403 and 404, 59 S.Ct. 923, 83 L.Ed. 1363. Under the decision of the court in that case, which involved shipments over the Southern Pacific in both directions from San Francisco to Portland, we are of opinion that plaintiff's contention cannot be sustained. We are here concerned with terminal-to-terminal transportation (Ogden, Utah, to Portland, Oregon). Under the terms of the Freight Land-Grant Equalization Agreement plaintiff agreed to accept for the transportation of Government property the same net rates which a land-grant carrier would be entitled to receive for such transportation service. In Southern Railway Company v. United States, 322 U.S. 72, 75, 76, 64 S.Ct. 869, 872, 88 L.Ed. 1144, the court held that the phrase "lowest net rates lawfully available" means "the lowest net rates which could have been obtained on the basis of tariffs on file with the Interstate Commerce Commission." The

defendant used such rates in this case, and the evidence is not sufficient to show that the Equalization Agreement intended that the deduction for land-grant distance, in determining the lowest net rates lawfully available, should, in all cases, be limited to the percentage of land-grant mileage in the route having the lowest tariff rate. In the absence of an affirmative exception the rule applicable to a land-grant carrier must be applied to an equalization carrier. In the case of the Southern Railway Company v. United States, supra, which involved the use by defendant of a circuitous and noncompetitive route for the purpose of obtaining the largest land-grant deduction, the court, 322 U.S. at page 76, 64 S.Ct. at page 872, said:

"The land-grant route was chosen merely for the purpose of computing the rate. The fact that in a given case the shipment probably would not have moved over the land-grant route is immaterial. The United States was bargaining for low rates for the shipment of its property. * *. * It did not in terms state that land-grant routes, though actually available, would not be used in computing the rate unless they would in fact have been convenient or practicable to use for the particular shipment. The standard it prescribes is 'the lowest net rates lawfully available.' We may not resolve any ambiguities which may linger in that phrase against the United States. Cf. Southern Pacific Co. v. United States, supra, 307 U.S. 393, at page 401, 59 S.Ct. 923, 83 L.Ed. 1363. We are not warranted in assuming that the United States was more generous to this carrier than the language of the contract requires. We must assume that the contracting officers for the United

1. The through rates between Ogden and Portland used as gross rates by both the plaintiff and the General Accounting Office, are those quoted in the tariffs cited in finding 9. In each of those tariffs the application of the rate is shown to be via the Southern Pacific lines *through Alturas*. Each tariff contained the following provision:

The rates named in this tariff will apply only via the routes and junction points authorized herein, except that when in the case of pronounced traffic congestion (not an embargo), wash-out, wreck, or other similar emergency, or through carriers' error, carriers forward shipments via other junction points of the same carriers or via lines of other carriers parties to the tariff, the rate to apply will be that specified in this tariff, but not higher than the rate applicable via the route of movement.

The rates applicable under the tariffs between Ogden and Portland, *via Roseville*, were combinations of local and other rates.

States drove as provident a bargain as a reading of the agreement fairly permits."

In Southern Pacific Co. v. United States, supra, the court held that the Government was entitled under the land-grant act, in computing the compensation due the land-grant carrier, to use the lower tariff rate available on a route which was in part non-land-grant and the higher land-grant percentage deduction applicable to the original land-grant route, irrespective of which route was used in shipment, and in that connection said, 307 U.S. at page 401, 59 S.Ct. at page 928:

"It is urged, however, that in this instance we have a new line, an addition, rather than a cut-off in or a shortening or straightening of an original line. So far as terminal-to-terminal transportation is concerned, the Cascade Route does not function as a new line or an addition. It is simply another way of carrying goods by the same railroad between San Francisco and Portland. By which route the shipment moves, is immaterial on the question of deduction for land grants. The conclusion that the lowest public tariffs are to have land-grant deductions based upon the proportion of the land-grant mileage in the original line, seems consonant with the purpose of the acts."

Since the main objective of the Equalization Agreement was to give the Government, in shipment of property over the lines of an equalization carrier, the benefit of the reduced rates available to it over a land-grant carrier between the same points, we are of the opinion that the decision of the court in the Southern Pacific case is applicable here. We cannot, therefore, sustain plaintiff's claim that the phrase "the lowest net rates lawfully available, as derived through deductions account of land-grant distance from lawful rates filed * * *," means, in a case such as this, the land-grant distance, or mileage, in the particular route having the lowest tariff rate.

Plaintiff is not entitled to recover and its petition is dismissed. It is so ordered.

HOWELL, MADDEN, and WHITAKER, Judges, concur.

JONES, Chief Judge, dissents.